UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LEROY ROBINSON,<br><br>       Plaintiff,<br><br>v.<br><br>LANDMARK INFRASTRUCTURE PARTNERS LP, ARTHUR P. BRAZY, JR., STEVEN M. SONNENSTEIN, SADIQ MALIK, THOMAS CAREY WHITE III, GERALD A. TYWONIUK, and KEITH BENSON,<br><br>       Defendants. | Case No. _____<br><br>JURY TRIAL DEMANDED |

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff, Leroy Robinson ("Plaintiff"), by his undersigned attorneys, for this Complaint against Defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel, as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1. This is an action brought by Plaintiff against Landmark Infrastructure Partners LP ("Landmark" or the "Company"), and the members of the board of directors of the Company's general partner, Landmark Infrastructure Partners GP LLC (collectively referred to as the "GP Board" or the "Individual Defendants" and, together with Landmark, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a) and Rule 14a-9, 17 C.F.R. § 240.14a-9. Plaintiff's claims arise in connection with the proposed acquisition of the Company by Landmark Dividend LLC ("Landmark Dividend") and its affiliates LM DV Infrastructure, LLC ("LM DV Infra"), LM Infra

Acquisition Company, LLC ("LM Infra"), Digital LD MergerCo LLC ("Merger Sub"), and Digital LD MergerCo II LLC ("Merger Sub II") (together, the "Buyer Parties") ("Proposed Transaction").

2. On August 21, 2021, Landmark entered into a definitive Transaction Agreement with the Buyer Parties ("Transaction Agreement"), whereby each outstanding common unit, representing limited partner interests in Landmark, will be converted into the right to receive $16.50 in cash per Landmark common unit owned ("Merger Consideration").

3. On September 10, 2021, in order to convince the Company's public common unitholders to vote in favor of the Proposed Transaction, Defendants authorized the filing of a materially incomplete and misleading Preliminary Proxy Statement ("Proxy") with the SEC, in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. In particular, the Proxy contains materially incomplete and misleading information concerning: (i) the financial projections for Landmark; (ii) the valuation analyses performed by the Conflicts Committee's financial advisor, Evercore Group L.L.C. ("Evercore"); and (iii) the Conflicts Committee.

5. The Proposed Transaction is expected to close in the fourth quarter of 2021, so the special meeting of Landmark's unitholders to vote on the Proposed Transaction is imminent ("Unitholder Vote"). Therefore, it is imperative that the material information omitted from the Proxy is disclosed prior to the Unitholder Vote, so the Company unitholders can properly exercise their corporate voting rights.

6. For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction, unless and until the material information discussed below is disclosed to Landmark

unitholders sufficiently before the Unitholder Vote or, in the event the Proposed Transaction is consummated, to recover damages resulting from Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

8. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over each Defendant by this Court permissible under the traditional notions of fair play and substantial justice. "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1309, 1315 (9th Cir. 1985). "[S]o long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court." *Id.* at 1316.

9. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as 28 U.S.C. § 1391, because Defendants are found or are inhabitants or transact business in this District. Indeed, Landmark's common unit trades on the NasdaqGM, which is headquartered in this District. *See, e.g., United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (collecting cases).

## PARTIES

10. Plaintiff is, and has been continuously throughout all times relevant hereto, the

3

owner of Landmark common unit.

11. Defendant Landmark is a public company incorporated under the laws of Delaware with principal executive offices located at 400 Continental Blvd., El Segundo, CA 90245. As mentioned above, the Company's common unit trades on the NasdaqGM under the ticker symbol "LMRK."

12. Defendant Arthur P. Brazy, Jr. is, and has been at all relevant times, a director of the Company and its Chief Executive Officer.

13. Defendant Steven M. Sonnenstein is, and has been at all relevant times, a director of the Company and Chairman of the GP Board.

14. Defendant Sadiq Malik is, and has been at all relevant times, a director of the Company.

15. Defendant Thomas Carey White III is, and has been at all relevant times, a director of the Company.

16. Defendant Gerald A. Tywoniuk is, and has been at all relevant times, a director of the Company.

17. Defendant Keith Benson ("Defendant Benson") is, and has been at all relevant times, a director of the Company and a member of the Conflicts Committee of the GP Board.

18. Defendants identified in paragraphs 12 through 17 are collectively referred to herein as the "GP Board" or the "Individual Defendants," and together with the Company, the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**I.      Background of the Company, Landmark Dividend, and the Proposed Transaction**

19. Landmark acquires, owns, develops, and manages a portfolio of real property

interests and infrastructure assets in the United States. The Company leases its real property interests and infrastructure assets to companies operating in the wireless communication, digital infrastructure, outdoor advertising, and renewable power generation industries. Landmark's real property interests primarily include long-term and perpetual easements, tenant lease assignments, fee simple properties, and infrastructure assets. It also owns various interests in receivables associated with related assets. Landmark Infrastructure Partners GP LLC ("GP") serves as the general partner of the Company.

20. Landmark Dividend is a private LLC that operates as a ground leasing company. It provides leasing of property for cell towers, billboards, wind turbines, utility-scale solar farms, and fibre optic networks to customers in the United States. Landmark Dividend is the Company's Sponsor and is the sole member (or 100% owner) of GP. Indeed, Landmark Dividend owns in the aggregate: (i) 3,360,308 common units of the Company (i.e. approximately 13.2% of the total outstanding Landmark common units as of December 31, 2020); (ii) all of the GP's interests (as defined in the Partnership Agreement); and (iii) all of the Incentive Distribution Rights (as defined in the Partnership Agreement). Subject to certain limitations in the Transaction Agreement with respect to members of the Conflicts Committee, Landmark Dividend has the right to appoint and remove all of the members of the GP Board.

21. According to the August 23, 2021, press release announcing the Proposed Transaction:

### Landmark Infrastructure Partners LP to be Acquired by its Sponsor, Landmark Dividend LLC

EL SEGUNDO, Calif., Aug. 23, 2021 – Landmark Infrastructure Partners LP ("Landmark," or the "Partnership") (NASDAQ: LMRK) today announced that, following lengthy negotiations between the Conflicts Committee of the Board of Directors of Landmark Infrastructure Partners GP LLC (the "General Partner" or "GP") (the "Conflicts Committee") and the Partnership's sponsor, Landmark

> Dividend LLC ("LD"), the Partnership and LD have entered into a definitive agreement under which the Partnership will be acquired by LD.
>
> Under the terms of the agreement, Landmark public unitholders will receive $16.50 in cash for each common unit owned, representing a premium of 38% to the Partnership's unaffected unit price on May 14, 2021, the last business day prior to the announcement of LD's proposed acquisition of Landmark for $13.00 per common unit. The agreement between Landmark and LD reflects one of the highest premiums ever paid in a transaction where a GP purchases its MLP.
>
> LD owns, among other things, 100% of the membership interests in the General Partner and 13.2% of the common units representing limited partner interests in the Partnership. After consultation with its independent legal and financial advisors, and consistent with the recommendation of the Conflicts Committee that is composed entirely of independent directors of the GP, the agreement was reviewed and unanimously approved by the full Board of Directors of the GP. Both the Conflicts Committee and the full Board of Directors of the GP determined the transaction with LD to be in the best interests of the Partnership.
>
> LD is only considering the acquisition of Landmark or, if the proposed transaction is not consummated as expected, LD will continue operating Landmark in its role as the GP. LD is not considering third party offers for Landmark or its assets. LD's acquisition of Landmark is fully financed and fully diligenced, and takes into account the value inherent in LD's GP ownership interest and incentive distribution rights ("IDRs"). LD is interested in acquiring all of Landmark's assets, as evidenced by its agreement to purchase the entire Partnership rather than select assets. This transaction offers certainty as well as compelling and immediate value for unitholders, particularly given that Landmark's cash flow will be adversely impacted by the expiration of the cap on Landmark's agreement to reimburse LD for a portion of its expenses for general and administrative services on November 19, 2021. In addition, the GP intends to exercise its contractual right to be reimbursed for costs and expenses it incurs for services provided to Landmark. The transaction is expected to close in 2021, subject to customary closing conditions and approval by the holders of a majority of Landmark's outstanding common units.
>
> TAP Securities LLC and RBC Capital Markets are acting as financial advisors and Simpson Thacher & Bartlett LLP and Latham & Watkins, LLP are acting as legal advisors to LD. Truist Securities Inc. is acting as left lead arranger and joint bookrunner, and Citizens Bank N.A., RBC Capital Markets and TD Securities (USA) LLC are acting as joint lead arrangers and joint bookrunners for the debt financing. Evercore is acting as exclusive financial advisor and Gibson, Dunn & Crutcher LLP is acting as legal advisor to the Conflicts Committee.

(Emphasis in original).

## II.     The Proxy Omits Material Information

22.     Defendants filed a materially incomplete and misleading Proxy with the SEC, despite the Individual Defendants being obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's unitholders, to ensure that it did not contain any material misrepresentations or omissions. Thus, the Proxy should be amended prior to the Unitholder Vote, so unitholders can make an informed voting decision in connection with the Proposed Transaction.

23.     First, the Proxy fails to disclose material information concerning the financial projections for Landmark.

24.     To start, the Proxy fails to disclose whether the "LMRK Financial Projections" utilized by Evercore in deriving its financial analyses, is the same as the "Management Case" projections disclosed in the projections section of the Proxy. If the two sets of projections are the same, then the Proxy must be corrected to reflect that information. However, if the LMRK Financial Projections and the Management Case projections are different, then Defendants must disclose the LMRK Financial Projections that were relied upon by Evercore in performing its financial analyses.

25.     Next, the Proxy omits the figures underlying the inputs used to calculate Landmark's Management Case projections. For example, the Proxy indicates that net income was an input used to calculate Landmark's EBITDA, yet the Proxy fails to disclose the net income projections. Net income projections are a crucial metric for unitholders to be apprised of when evaluating a transaction. *See Campbell v. Transgenomic, Inc.*, 916 F.3d 1121, 1125 (8th Cir. 2019) ("The disclosure of Precipio's net income/loss figures could have significantly altered the total mix by informing shareholders about pre-merger Precipio's net income/loss.").

26. Unlike poker where a player must conceal his unexposed cards, the object of a proxy statement is to put all of one's cards on the table face-up. In this case, only some of the cards were exposed—the others were concealed. If a proxy statement discloses financial projections and valuation information, such projections must be complete and accurate. The question here is not the duty to speak, but liability for not having spoken enough. With regard to future events, uncertain figures, and other so-called soft information, a company may choose silence or speech elaborated by the factual basis as then known—but it may not choose half-truths. *See id.* (noting that "half-truths" are actionable misrepresentations under securities laws and collecting cases).

27. Second, the Proxy omits material information with regard to Evercore's financial analyses performed in connection with the Proposed Transaction.

28. The Proxy states that Evercore reviewed publicly-available research analyst estimates for Landmark, but it omits the names of the analysts and the corresponding price targets observed. Disclosure of this information is important, so the Company unitholders can compare the Merger Consideration to the analyst price targets, in order to determine whether the Merger Consideration is fair.

29. With respect to the *Discounted Cash Flow Analysis*, the Proxy fails to disclose the inputs and assumptions underlying Evercore's selection of: (i) a range of discount rates of 6.5% to 7.5%; (ii) a range of EBITDA exit multiples of 13.0x to 17.0x; and (iii) a range of perpetuity growth rates of 2.0% to 3.0%.

30. These key inputs are material to the Company's unitholders, and its omission renders the summary of Evercore's *Discounted Cash Flow Analysis* incomplete and misleading. As one highly-respected law professor explained regarding these crucial inputs, in a discounted

cash flow analysis a banker takes management's forecasts, and then makes several key choices "each of which can significantly affect the final valuation." Steven M. Davidoff, Fairness Opinions, 55 Am. U.L. Rev. 1557, 1576 (2006). Such choices include "the appropriate discount rate, and the terminal value…" *Id.* As Professor Davidoff explains:

> *There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value. For example, a change in the discount rate by one percent on a stream of cash flows in the billions of dollars can change the discounted cash flow value by tens if not hundreds of millions of dollars….This issue arises not only with a discounted cash flow analysis, but with each of the other valuation techniques. This dazzling variability makes it difficult to rely, compare, or analyze the valuations underlying a fairness opinion* **unless full disclosure is made of the various inputs in the valuation process, the weight assigned for each, and the rationale underlying these choices**. The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness. This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions.

*Id.* at 1577-78 (emphasis added). Without the above-mentioned information, Landmark unitholders cannot evaluate for themselves the reliability of Evercore's *Discounted Cash Flow Analysis*, make a meaningful determination of whether the implied equity value ranges reflect the true value of the Company, or were the result of an unreasonable judgment by Evercore, and make an informed decision regarding whether to vote in favor of the Proposed Transaction.

31. Further, for Evercore's *Discounted Distribution Analysis*, the Proxy omits the inputs and assumptions underlying: (i) selection of a terminal yield range of 6.0% to 7.5%; (ii) the CAPM, used to select a cost of equity of 12.5% to 14.5%; and (iii) a cost of equity of 10.5% to 12.5%, based on expected market total return for peers of Landmark.

32. Regarding the *Precedent M&A Transaction Analysis*, the Proxy omits the individual EBITDA multiples observed for each of the 14 comparable transactions selected by

9

Evercore. Moreover, the Proxy does not disclose the inputs and assumptions underpinning Evercore's selection of a discount rate of 7.0%.

33. As for the *Peer Group Trading Analysis*, while the Proxy discloses the mean and median multiples observed, the Proxy fails to disclose the individual multiples for each of the 24 comparable partnerships/companies selected by Evercore.

34. Finally, for Evercore's *Premiums Paid Analysis*, the Proxy includes the maximum, minimum, median, and mean premiums paid, but it does not disclose the individual premiums paid for each of the transactions observed.

35. Third, the Proxy mentions that Defendant Benson is a member of the Conflicts Committee, but it omits who the other members of the Conflicts Committee are. Disclosure of **all** members of the Conflicts Committee is crucial for Landmark unitholders to determine for themselves whether the committee members met the requirements stated in the Fourth Amended and Restated Agreement of Limited Partnership of Landmark, dated April 2, 2018. In particular, the Company's unitholders need to be aware of whether any of the committee members had potential conflicts of interest in connection with the Proposed Transaction.

36. In sum, omission of the above-referenced information renders the Proxy materially incomplete and misleadin g, in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the Unitholder Vote concerning the Proposed Transaction, Plaintiff will be unable to make an informed decision regarding whether to vote his units in favor of the Proposed Transaction, and he is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CAUSES OF ACTION

### COUNT I
### (Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9)

37. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

38. Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

39. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

40. The omission of information from a proxy will violate Section 14(a) and Rule 14a-9 if other SEC regulations specifically require disclosure of the omitted information.

41. Defendants have issued the Proxy with the intention of soliciting the Company's public common unitholders support for the Proposed Transaction. Each of the Individual Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide critical information regarding: (i) the financial projections for Landmark; (ii) the valuation analyses performed by Evercore; and (iii) the Conflicts Committee.

42. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to the Company's unitholders although they could have done so without extraordinary effort.

43. The Individual Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon most if not all of the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the Proxy states that Evercore reviewed and discussed its financial analyses with the Individual Defendants, and further states that the Individual Defendants considered the financial analyses provided by Evercore, as well as its fairness opinion and the assumptions made and matters considered in connection therewith. Further, the Individual Defendants were privy to and had knowledge of the Company's projections and the details surrounding the process leading up to the signing of the Transaction Agreement. The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading. Indeed, the Individual Defendants were required to, separately, review Evercore's analyses in connection with their receipt of the fairness opinion, question Evercore as to its derivation of fairness, and be particularly attentive to the procedures

followed in preparing the Proxy and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

44. The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy. The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Individual Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Transaction Agreement, and preparation and review of the Company's projections.

45. Landmark is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Proxy.

46. The misrepresentations and omissions in the Proxy are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the Unitholder Vote. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II
**(Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)**

47. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

48. The Individual Defendants acted as controlling persons of Landmark within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Landmark, and participation in and/or awareness of the Company's

13

operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

49. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

50. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

51. In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Transaction Agreement. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

52. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

53. As set forth above, the Individual Defendants had the ability to exercise control

over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

54. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily enjoining Defendants and all persons acting in concert with them from proceeding with the Unitholder Vote or consummating the Proposed Transaction, unless and until the Company discloses the material information discussed above which has been omitted from the Proxy;

B. Directing Defendants to account to Plaintiff for all damages sustained as a result of their wrongdoing;

C. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' fees and expenses; and

D. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

//

//

Dated: September 24, 2021            **MONTEVERDE & ASSOCIATES PC**

*/s/* Juan E. Monteverde
Juan E. Monteverde (JM-8169)
The Empire State Building
350 Fifth Avenue, Suite 4405
New York, NY 10118
Tel: (212) 971-1341
Fax: (212) 202-7880
Email: jmonteverde@monteverdelaw.com

*Attorneys for Plaintiff*